[No. B034700. Second Dist., Div. One. May 25, 1989.]

DANIEL E. DYER, Plaintiff and Appellant, v.
NORTHBROOK PROPERTY AND CASUALTY INSURANCE
COMPANY, Defendant and Respondent.

## COUNSEL

Walleck, Shane & Stanard, Roger L. Stanard, David I. Karp and George P. Ritter for Plaintiff and Appellant.

Peterson, Ross, Schloerb & Seidel and Mark D. Peterson for Defendant and Respondent.

## OPINION

**HANSON, J.—**

### INTRODUCTION

On August 5, 1987, plaintiff Daniel E. Dyer filed a complaint for breach of contract, breach of the implied covenant of good faith and fair dealing, and for violation of Insurance Code section 790.03 against defendant Northbrook Property and Casualty Insurance Company (Northbrook), Central Mutual Insurance Company, and 200 unnamed defendants.

On November 17, 1987, Judge Miriam A. Vogel sustained Northbrook's demurrer to Dyer's complaint, but granted Dyer 30 days to file an amended complaint. Dyer filed his amended complaint on December 22, 1987. On January 20, 1988, Northbrook and Casualty Insurance Company filed a demurrer to Dyer's first amended complaint. On March 28, 1988, Judge Dion G. Morrow sustained the demurrer without leave to amend, which ruling was reflected in the court's April 21, 1988, judgment in favor of defendant Northbrook.

Notice of entry of judgment was filed May 5, 1988. Plaintiff filed a timely appeal on May 10, 1988.

### STANDARD OF REVIEW

██ In testing a complaint a demurrer admits all material and issuable facts properly pleaded in the complaint, but does not admit contentions,

deductions, or conclusions. (*Daar* v. *Yellow Cab Co.* (1967) 67 Cal.2d 695, 713 [63 Cal.Rptr. 724, 433 P.2d 732]; *Serrano* v. *Priest* (1971) 5 Cal.3d 584, 591 [96 Cal.Rptr. 601, 487 P.2d 1241, 41 A.L.R.3d 1187].)

## FACTS

The first amended complaint pleads the following facts.[1] Plaintiff Daniel Dyer is the assignee of all right, title, claims and interests of Allfast Fastening Systems, Inc.; Glover Mills Sales Co.; Glover Mills Co.; Randall Properties; Investments by Randall, Inc.; JHR International Sales Corp; and 15255 Don Julian Road Corporation.

Central Mutual Insurance Company, an Ohio corporation, and Northbrook Property and Casualty Insurance Company, an Illinois corporation, do business in California as foreign corporations. Each defendant was the agent, servant, and employee of each of the remaining defendants, and acted with the remaining defendants' express or implied permission and consent.

In the first cause of action for breach of contract, plaintiff alleged that before October 3, 1986, Central Mutual and Northbrook insured the assignors and James Randall by written liability policies, attached to the complaint.

Defendants, by their insurance policies, promised and contracted to defend assignors and Randall against suits seeking damages potentially covered under the policies. On October 5, 1984, Dyer brought Los Angeles Superior Court action No. C489592 against assignors and Randall for wrongful termination of employment. Pursuant to California law and the insurance contracts, defendants had a duty to defend the insured assignors against the claims made in Dyer's suit for their potential vicarious liability of Randall, their agent or employee. Defendants also had the duty to defend against an array of potential negligence causes of action for bodily injury, including causes of action which the complaint could be amended to include, such as negligent infliction of emotional distress.

On July 11, 1985, assignors submitted a claim and tender of defense to Northbrook, and on September 30, 1985, submitted a claim and tender of defense to Central Mutual. Assignors had performed all conditions, covenants, and promises required of them pursuant to the insurance policies, except to the extent that defendants prevented such performance or are estopped to assert to the contrary.

---

[1] Although the demurrer which is the subject of this appeal concerns only one defendant, Northbrook, the first amended complaint refers to several defendants, as will the statement of facts in this opinion.

In its August 8, 1985, letter, Northbrook refused to defend the insured assignors against the claims in Dyer's civil action. On March 4, 1986, Central Mutual refused to defend the insured assignors against the claims in Dyer's suit. Defendants also refused to defend the insured assignors against their potential vicarious liability for the conduct of Randall, and against causes of action for bodily injury (actual as well as those that could be included in an amended complaint). Defendants' refusal caused assignors to be financially unable to defend the Dyer civil action against them, requiring them to settle the case and stipulate to a judgment filed on March 30, 1987, and amended on April 30, 1987.[2] Assignors were damaged in amount no less than $500,000, the insurance policy limit under which defendants were required to defend assignors.

In the second cause of action for breach of the implied covenant of good faith and fair dealing, plaintiff alleged that assignors and defendants, as insureds and insurers, stood in a special relationship with one another. Plaintiff alleged that defendants' refusal to defend the assignors against claims in Dyer's suit was wrongful and in bad faith, and violated the implied covenant of good faith and fair dealing. Each of the defendants knew or should have known that the insureds had potential liability for other causes of action normally associated with wrongful termination actions. Defendants' breach of the implied covenant caused the assignors to be financially unable to defend the action, and required them to stipulate to a judgment against them of $700,000, making defendants liable to plaintiff for that amount.

Plaintiff's third cause of action for wrongful refusal to settle alleged that on May 21, 1987, plaintiff sent defendant a copy of the $700,000 judgment against the insured assignors, and an offer to settle the case for $500,000, the insurance policy limits. Northbrook refused the settlement offer, alleging that no coverage had existed for the judgment to the detriment of the assignors and of plaintiff.

---

[2] The March 30, 1987, judgment on stipulation for immediate entry of judgment, as amended on April 30, 1987, in Dyer's suit against the assignors, found in favor of plaintiff against defendants, awarding $700,000 for personal injuries on the sixth and seventh causes of action for wrongful termination, and $462,500 in contract damages on the remaining causes of action. The judgment stated that defendants should immediately pay $87,500 to plaintiff in partial satisfaction and as a reduction in plaintiff's personal injury damages, and that except for that payment, plaintiff should not execute or otherwise enforce the $700,000 portion of the judgment. The judgment further stated that plaintiff should not execute upon the $462,500 contract damages provided that defendant timely paid to plaintiff monthly payments in an amount that increased from $4,000 per month in October 1986 to $6,000 per month in September 1991, with $326,907.07, the balance of monies owing, on or before October 1, 1991. The judgment contained further provisions for procedures upon defendants' default of these installment payments.

The first amended complaint alleged that the refusal to accept a reasonable settlement offer damaged the assignors by making them responsible for a judgment in excess of the insurance policy limits in the amount of $700,000.

The fourth cause of action, for breach of Insurance Code section 790.03 duties, alleged that the defendant insurers knowingly committed or performed the following acts with such frequency as to indicate a general business practice: (a) failing to adopt and implement reasonable standards for prompt investigation and processing of insurance claims, and (b) not attempting in good faith to effectuate prompt, fair, and equitable settlements of claims in which liability has become reasonably clear. Plaintiff alleged that had defendants promptly and adequately investigated the assignors' claims made in response to Dyer's lawsuit, they would have discovered the potential for liability clearly existed and a defense should have been provided. Plaintiff further alleged that defendants refused in bad faith to settle his claim, violating Insurance Code section 790.03 and causing plaintiff no less than $500,000 damage. Plaintiff finally alleged that defendants' actions were willful, malicious, oppressive, and fraudulent, justifying a $10 million punitive and exemplary damages award.

Further facts necessary to resolve the issues on appeal will appear in the "discussion," *infra*.

## ISSUES

Plaintiff on appeal claims that

1. Northbrook had a duty to defend because there was the potential of bodily injury liability;

2. The collusive settlement is a factual issue that should be raised by way of an affirmative defense;

3. Northbrook and the trial court failed to distinguish between intentional acts and accidental results;

4. Allfast's potential vicarious liability was accidental, unforeseen, and a nonintentional event; and that

5. Under the Northbrook policy, Allfast and its agents had a reasonable expectation of a defense.

DISCUSSION

I.

■ Plaintiff on appeal initially claims that Northbrook had the duty to defend the assignor insureds because they were potentially liable for plaintiff's bodily injury. Plaintiff cites *Gray v. Zurich Insurance Co.* (1966) 65 Cal.2d 263 [54 Cal.Rptr. 104, 419 P.2d 168] to the effect that the insurance carrier must defend a suit that potentially seeks damages within the coverage of the policy.

The Northbrook insurance policy states in part: "The company will pay on behalf of the insured all sums which the insured shall become legally obligated to pay as damages because of bodily injury or property damage to which this insurance applies, caused by an occurrence, and the Company shall have the right and duty to defend any suit against the insured seeking damages on account of such bodily injury or property damage, even if any of the allegations of the suit are groundless, false or fraudulent, and may make such investigation and settlement of any claim or suit as it deems expedient, but the Company shall not be obligated to pay any claim or judgment or to defend any suit after the applicable limit of the Company's liability has been exhausted by payment of judgments or settlements."

The insurance policy defines an "occurrence" as follows: " '[O]ccurrence' means an accident, including continuous or repeated exposure to conditions, which results in bodily injury or property damage neither expected nor intended from the standpoint of the insured." (This is evidently standard language: see *Schrillo Co. v. Hartford Accident & Indemnity Co.* (1986) 181 Cal.App.3d 766, 771-772 [226 Cal.Rptr. 717].) With regard to section III of the insurance policy, " 'Occurrence' when used in reference to this part shall also include any intentional act by or at the direction of the insured which results in bodily injury, if such injury arises solely from the use of reasonable force for the purpose of protecting persons or property."

Plaintiff defines "bodily injury" arising from wrongful termination to include harm caused by emotional distress, as do several cases. (*Agarwal v. Johnson* (1979) 25 Cal.3d 932, 944-946 [160 Cal.Rptr. 141, 603 P.2d 58]; see also *Abellon v. Hartford Ins. Co.* (1985) 167 Cal.App.3d 21, 26-30 [212 Cal.Rptr. 852], and cases there cited.)

The question the case at bench presents, however, is whether the policy covers bodily injury arising from termination of employment. Specifically, is termination of employment an "occurrence" covered by the insurance policy?

*Royal Globe Ins. Co.* v. *Whitaker* (1986) 181 Cal.App.3d 532, 537 [226 Cal.Rptr. 435] distinguishes between the duty to defend outlined in *Gray* and cases raising the scope of policy coverage. In *Gray,* broadly interpreting the insurer's duty to defend, the insurer unsuccessfully relied on an unclear exclusionary clause to assert it was not obligated to defend its insured. However, if the question concerns the scope of basic coverage, the burden of proof shifts to the plaintiff. ■ "While the burden is on the insurer to prove a claim covered falls within an exclusion [citation], the burden is on the insured to prove that an event is a claim within the scope of the basic coverage." (*Id*. at p. 537; see also *Giddings* v. *Industrial Indemnity Co.* (1980) 112 Cal.App.3d 213, 218 [169 Cal.Rptr. 278].)

■ The nature and kind of risk covered by the policy limits the duty to defend. The carrier has the duty to defend the insured against loss of the nature and kind against which it was insured. (*Gray* v. *Zurich Insurance Co., supra,* 65 Cal.2d 263, 275.) By negative implication, the insurer has no duty to defend the insured against loss of the nature and kind that is not "within the coverage of the policy." (*Id*. at p. 275.) Thus *Gray* distinguished between an ambiguous exclusionary clause that did not contradict the insured's reasonable expectation of coverage, on one hand, and a liability not covered by the policy, on the other. Where the scope of basic coverage creates no potential liability under the policy, the courts may not use a strained construction to impose a liability upon an insurer that it has not assumed. (*Hallmark Ins. Co.* v. *Superior Court* (1988) 201 Cal.App.3d 1014, 1017 [247 Cal.Rptr. 638].)

■ An intentional act is not an "accident." (*Royal Globe Insurance Co.* v. *Whitaker, supra,* 181 Cal.App.3d 532, 537.) More to the point, "[a]n intentional termination is not an 'occurrence' under the policy because it is not an accident." (*Commercial Union Ins. Co.* v. *Superior Court* (1987) 196 Cal.App.3d 1205, 1209 [242 Cal.Rptr. 454]: rejecting insured's claim that emotional distress was not expected to arise from termination of an employee.)

As did the *Commercial Union* opinion, we note the holding of *St. Paul Fire & Marine Ins. Co.* v. *Superior Court* (1984) 161 Cal.App.3d 1199 [208 Cal.Rptr. 5]. There an insurer sought a declaratory judgment that it had no obligation to defend or indemnify the insured for liability in a former employee's wrongful termination suit. Because the policy expressly covered only claims against the insured "resulting from an accidental event," which "must be something [the insured] didn't expect or intend to happen," and the termination was not an unintentional, unexpected, chance occurrence, *St. Paul* held that the insurer had no potential liability under the policy and owed no obligation to defend the insured. (*Id*. at p. 1202.)

Plaintiff in the case at bench argues that *Royal Globe, St. Paul,* and *Commercial Union* erroneously diverge from *Gray* by drawing an "artificial distinction" between unexpected or unintended acts and unexpected or unintended damages or injuries of such acts, and by treating an exclusionary clause differently from basic coverage provisions.

As to the first point, plaintiff cites several cases holding that an accident can occur when an intentional act causes unintended or unexpected harm. *Ritchie* v. *Anchor Casualty Co.* (1955) 135 Cal.App.2d 245, 252-254 [286 P.2d 1000], defines "accident" as "a casualty—something out of the usual course of events and which happens suddenly and unexpectedly, and without any design of the person injured[,]" and states that "the unexpected and unforeseeable result of a voluntary act fulfills the terms of the policy as to the event covered thereby." That case, however, concerned whether an insurance policy covered liability for the cost of settling a dispute arising from the sale of rancid oil mistakenly used to manufacture corn chips. *Geddes & Smith, Inc.* v. *St. Paul Mercury Indemnity Co.* (1959) 51 Cal.2d 558, 563 [334 P.2d 881], uses the same definition, adjudicating an insurer's liability to its insured, which was being sued for manufacturing and selling defective aluminum doors, door jambs, and attached hardware. *Meyer* v. *Pacific Employers Ins. Co.* (1965) 233 Cal.App.2d 321, 327 [43 Cal.Rptr. 542], citing the definition in *Ritchie,* adjudicated a suit by plaintiffs adjacent landowners against the insurer of a construction partnership whose drilling of a well damaged plaintiffs' buildings.

None of these cases, however, pertain to an insurer's liability to an employer insured for emotional distress arising from the employer's termination of an employee. The policy may indeed cover unforeseen and unintended consequences of an intentional act if they are "a risk against which the circumstances under which and the purposes for which the policy was written indicate the insured intended to protect himself. . . ." (233 Cal.App.2d at p. 328.) But the policy in the case at bench, given its definition of "occurrence," does not reasonably cover the employer insured's risk of liability for emotional distress damages arising from an employee's termination.

As to the second issue, *Gray* specifically declared that the policy language did not "clearly define the application of the exclusionary clause to the duty to defend." (*Gray* v. *Zurich Insurance Co., supra,* 65 Cal.2d 263, 267.) This statement underpins the first ground supporting the holding in *Gray* : "Since the policy sets forth the duty to defend as a primary one and since the insurer attempts to avoid it only by an unclear exclusionary clause, the insured would reasonably expect, and is legally entitled to, such protection." The second ground supporting the holding in *Gray* also pertains to

the issues of the case at bench: "we accept . . . [the] contention that the duty to defend arises only if the third party suit involves a liability for which the insurer would be required to indemnify the insured, and, even upon this basis, we find a duty to defend." (*Id.* at p. 268.) These two alternative grounds; language in *Gray* (quoted *supra*) implying no duty to defend against liability not covered by the policy; and *Gray*'s statement that any exception to the performance of the "basic underlying obligation" must clearly inform the insured of its effect (*id.* at p. 269), indicate that treating an exclusionary clause differently from basic coverage provisions does not contradict *Gray*.

Applying the "insured's reasonable expectation of coverage" analysis (65 Cal.2d at p. 267), *Gray* found the policy's provisions on the duty to defend "uncertain and undefined; in the light of the reasonable expectation of the insured, they require the performance of that duty." (*Id.* at p. 271.) By contrast, in the case at bench, the policy language states that the insurer will pay on behalf of the insured "all sums which the insured shall become legally obligated to pay as damages because of bodily injury or property damages *to which this insurance applies, caused by an occurrence. . . .*" (Italics added.) The policy further defines an "occurrence" as "an *accident,* including continuous or repeated exposure to conditions, which results in bodily injury or property damage neither expected nor intended from the standpoint of the insured." (Italics added.)

■ "An insured is not covered for acts or omissions for which it is potentially liable if the underlying suit involves only acts the nature of which are clearly not covered by the policy or acts which are clearly excluded from coverage. The resolution of these inquiries is dependent upon the reasonable expectations of the insured; e.g., is the exclusionary clause upon which the insurer relies to deny coverage conspicuous and clear? Could the insured reasonably expect the policy to cover the types of acts involved in the underlying suit?" (*Ohio Casualty Ins. Co.* v. *Hubbard* (1984) 162 Cal.App.3d 939, 947 [208 Cal.Rptr. 806].)

■ In the case at bench we construe the policy language to exclude coverage of emotional distress arising after termination of employment. Determination whether an insured's expectation of coverage is reasonable is a question of law. (*Hallmark Ins. Co.* v. *Superior Court, supra,* 201 Cal.App.3d 1014, 1019.) We do not find it reasonable for the insured to expect this insurance policy to cover the employer's liability for an employee's emotional distress arising from termination of employment. (See *St. Paul Fire & Marine Ins. Co.* v. *Superior Court, supra,* 161 Cal.App.3d 1199, 1201-1203, and *Commercial Union Ins. Co.* v. *Superior Court, supra,* 196 Cal.App.3d 1205, 1207-1209.)

## II.

Plaintiff on appeal next claims that the collusive settlement is a factual issue that should be raised by way of an affirmative defense. Plaintiff argues that the trial court made an unwarranted assumption that his action against Northbrook was collusive as a matter of law. (This point arose when the trial judge in the hearing on the demurrer stated that the plaintiff's settlement of his suit for wrongful discharge against his employer, obtaining of the assignment of the employer's cause of action against the employer's insurance company, and suit against the insurance company "smack[ed] of collusion.")

Plaintiff argues that the law permits a defendant insured abandoned by its insurer to assign its rights against the insurer to an injured third party plaintiff, citing *Critz* v. *Farmers Ins. Group* (1964) 230 Cal.App.2d 788 [41 Cal.Rptr. 401, 12 A.L.R.3d 1142] and *Samson* v. *Transamerica Ins. Co.* (1981) 30 Cal.3d 220, 240-241 [178 Cal.Rptr. 343, 636 P.2d 32].

This issue, as plaintiff further argues and defendant concedes, is a question of fact not suitable for adjudication on demurrer. The transcript of the hearing on demurrer, however, reveals that the trial court based its ruling not on the possibility of collusion but instead on the lack of a cause of action under the facts alleged.

*Critz* found that the validity of the assignment against a defense of collusion turns on whether the insurer acted in good faith or breached its obligation to the policyholder. (*Critz* v. *Farmers Ins. Group, supra,* 230 Cal.App.2d 788, 803-804.)

In *Johansen* v. *California State Auto. Assn. Inter-Ins. Bureau* (1975) 15 Cal.3d 9, 21 [123 Cal.Rptr. 288, 538 P.2d 744], a defendant insured, liable for a judgment in excess of the insurance policy limit, assigned to a plaintiff his right against his insurer for refusing to accept a settlement offer within policy limits. In exchange, the plaintiff promised to release the insured from personal liability for the outstanding judgment. In determining the validity of the insurer's defense of collusion, the *Johansen* court focused upon whether the insured did anything to contribute to, or was responsible for, the judgment in excess of the policy limit.

In *Samson* v. *Transamerica Ins. Co., supra,* 30 Cal.3d 220, 241, the insured and plaintiffs agreed to settle. Plaintiffs promised not to execute against the insured in exchange for the insured's agreement to assign to plaintiff his cause of action against his insurer for refusing to defend and

rejecting a reasonable settlement offer within policy limits. *Samson* found no collusion in this settlement.

These cases presuppose the insurer's breach of its duty to defend or of its duty to accept a settlement offer within policy limits when there is a substantial likelihood of a recovery in excess of policy limits. We have found that in the case at bench the policy did not cover plaintiff's harm, so no defense of collusion by the insurer is either necessary or possible. No collusion can arise from the assignment of a nonexistent cause of action. For these reasons, plaintiff's claim on appeal that the trial court based its ruling on a collusion theory lacks merit.

### III.

Plaintiff claims on appeal that Allfast's potential vicarious liability was accidental, unforeseen, and a nonintentional event. Plaintiff argues that even if as a matter of law a wrongful termination caused no accidental damages, Allfast, one of Northbrook's insureds, would still be entitled to a defense because it was liable to Dyer under a theory of respondeat superior. Allfast's agents, plaintiff reasons, did the intentional acts, which made Allfast liable vicariously, not because of its own intentional or wilful conduct.

Plaintiff cites *Arenson* v. *Nat. Automobile & Cas. Ins. Co.* (1955) 45 Cal.2d 81 [286 P.2d 816], *Fireman's Fund Ins. Co.* v. *City of Turlock* (1985) 170 Cal.App.3d 988 [216 Cal.Rptr. 796], and *Dart Industries, Inc.* v. *Liberty Mutual Ins. Co.* (9th Cir. 1973) 484 F.2d 1295.

The insurance policy in *Arenson* defined "insured" to include relatives of the insured. Citing a provision excluding destruction caused intentionally, the insurer refused to defend the insured father in a suit for harm caused by his minor son, who started a fire that damaged school property. (A state statute made the parent liable for a pupil's damage to school property.) *Arenson* held that the policy protected the named insured against liability for intentional injury committed by another insured.

Adjudicating who the policy covered, *Arenson* found that an exclusionary provision barring another's claim does not preclude a particular named insured from recovering. In the case at bench, by contrast, the issue was not who the policy insured, but what harm it covered. *Arenson* stated that the exclusion provision in that policy prevented indemnifying one against loss from his own wrongful acts, but could not be construed to exclude coverage for another's wilful acts in the absence of a clear expression showing such intent. (45 Cal.2d at pp. 83-84.)

The acts in the case at bench—employment termination—were not "wrongful" or "wilful" in the sense that burning a school building was in *Arenson*. Moreover, the policy expressed the intent not to include a termination of employment as an "occurrence." The analysis in *Hartford Fire Ins. Co. v. Superior Court* (1983) 142 Cal.App.3d 406, 416-417 [191 Cal.Rptr. 37, 39 A.L.R.4th 189], pertains in the case at bench. In *Arenson,* the purpose of the exclusionary clause was to prevent an insured from recovering for his own intentional wrongdoing, but the policy nevertheless protected an insured from liability for intentional harm committed by another insured. *Arenson* did not, however, by its holding or analysis "create an independent basis of coverage for an activity excluded by the terms of the insurance policy." (*Id.* at p. 417.) In *Hartford Fire Ins.,* this meant that a homeowner's policy did not cover a widow's liability for damage caused by her deceased husband's piloting in a fatal plane crash.

*Arenson,* in other words, means that simply because an exclusionary clause releases the insurer from liability to one insured who forfeits his right to recovery because excluded conduct caused the harm, the rights of other insureds to recover under the policy remained unaffected. But the case at bench does not involve this factual issue. It involves not which of several insureds the policy insured from emotional distress harm arising from an employee termination, but whether the policy insured *anyone* against such harm. We have concluded it did not.

In *Fireman's Fund Ins. Co. v. City of Turlock, supra,* 170 Cal.App.3d 988, a terminated city police officer settled with the city employer. The city would retroactively rehire the officer, who would submit a secret letter of resignation some months later. The officer contended, however, that the secret resignation would remain confidential forever; the city contended it would remain confidential only until its effective date, and disclosed the letter to the press at that time.

After the city denied his claim for breach of the secrecy agreement, the officer sued and recovered damages for breach of contract from the city and damages for fraud from the city and the city attorney. Three insurers of the city either intervened, sued for declaratory relief, or were named as cross-defendants.

With regard to the officer's recovery of fraud damages against the city and city attorney, the jury rendered its verdict against the city on respondeat superior principles. *Fireman's Fund* relied on *Arenson* only insofar as *Arenson* found that Insurance Code section 533, codifying the rule that an insurance policy indemnifying the insured against liability due to his own wilful wrong is void as against public policy, does not apply where the

plaintiff is not personally at fault. Hence the respondeat superior verdict was not precluded by section 533, as the city had argued.

Besides upholding the respondeat superior verdict on a theory not present in the case at bench, *Fireman's Fund* involved fraud, not emotional distress. Moreover, unlike the case at bench the *Fireman's Fund* policy language for "personal injury liability" made no reference to an "occurrence." (170 Cal.App.3d at p. 999.) And *Fireman's Fund,* despite plaintiff's brief on appeal, did not involve a dispute about or cause of action arising from the insurer's duty to defend.

*Dart Industries, Inc.* v. *Liberty Mutual Insurance Co., supra,* 484 F.2d 1295, 1298, quotes the rule that public policy bars indemnification of an insured for liability incurred by his own unlawful act but does not likewise preclude vicarious liability. We reiterate, however, that where no underlying cause of action exists, no vicarious liability can exist either.

### DISPOSITION

We affirm the trial court's sustaining of the demurrer.

Spencer, P. J., and Ortega, J., concurred.