[Civ. Nos. 60184, 59108. Second Dist., Div. Five. July 9, 1981.]

FAYE L. WILLARD, Plaintiff and Appellant, v.
CARL R. HAGEMEISTER et al., Defendants and Respondents.

COUNSEL

Faye L. Willard, in pro. per., for Plaintiff and Appellant.

Omansky, Lyden & Lazarus, Alfred W. Omansky and Buck, Molony, Nimmo & Ammirato for Respondents.

## Opinion

**STEPHENS, Acting P. J.**—In these consolidated appeals, plaintiff and appellant, Faye L. Willard, seeks reversal of summary judgments in a dental malpractice action entered in favor of defendants and respondents Carl R. Hagemeister, D.D.S., Dennis R. Hardin, D.D.S., Jeffrey D. Waterman, D.D.S., Stanley G. Eichstaedt, D.D.S., and Stanley G. Eichstaedt, Inc.[1] The issue before this court is whether a disputed question of fact exists as to either the alleged negligence of respondents in providing dental care for appellant, or the purported misrepresentations made to her regarding the dental procedures used in this treatment.

Appellant's first amended complaint contains five causes of action alleging fraud and negligence (malpractice) by respondents.[2] The first four causes of action address both intentional and negligent misrepresentations which respondents Hagemeister and Hardin supposedly made to appellant. Appellant also seeks to impose liability against respondents Eichstaedt and Eichstaedt, Inc. for this alleged fraud. The complaint offers an agency theory for this requested recovery, asserting that Hagemeister and Hardin were dentists employed by the Eichstaedt clinic, and the principal (Eichstaedt) is liable for the wrongful conduct of his agents (Hagemeister and Hardin). Finally, the fifth cause of action is a general averment of negligence against all the respondents with regard to their diagnosis and treatment of appellant.

The relevant facts in this action concern three appearances by appellant at the Eichstaedt dental clinic (Spring Dental Arts). Appellant Willard was examined initially by respondent Hagemeister on February 4, 1976. She complained of a "chipped sidewall" on a tooth which she wanted to salvage for mastication. Hagemeister indicated that a root canal and crowning were necessary to save the tooth from decay. According to Willard, Hagemeister further represented that respondent

---

[1]Summary judgment was entered for defendants Hagemeister and Hardin on September 17, 1979, while defendants Waterman, Eichstaedt, and Eichstaedt, Inc., had their summary judgment entered on January 30, 1980 (Civ. No. 46436). Since common issues underlie the appeals from the initial summary judgment (Civ. No. 59108) and the subsequent trial court order (Civ. No. 60184), appellant's motion to consolidate was granted on October 8, 1980.

[2]Appellant filed her first amended complaint on June 16, 1977, with each of the respondents filing a timely answer thereto. This amended pleading was preceded by written notice (Jan. 25, 1977) of appellant's intent to commence this action, and an original complaint (filed Apr. 25, 1977) which contained 13 causes of action.

Hardin would immediately perform a root canal and "crown" the tooth, with the entire procedure to be completed within 30 minutes. Appellant alleges that her assent to this dental treatment was predicated on Hagemeister's representations that (1) the root canal and crown were essential to save the tooth, and (2) the complete process was a brief procedure.

Due to Dr. Hagemeister's physical condition, he was unable to personally perform the procedures. He referred appellant to respondent Hardin that same day. Doctor Hardin completed the root canal on February 4, 1976, but elected not to crown the tooth on that date. According to Hardin, he wanted to make certain that the root canal was successful before crowning the tooth. Willard alleges, however, that Hardin guaranteed the completion of the root canal and crowning within 30 minutes. Moreover, Hardin concedes that he reiterated Hagemeister's diagnosis that the entire procedure (root canal and crowning) was necessary to salvage the tooth. This same respondent also indicates that the crowning was not performed on that date because the tooth "might require extraction" if the root canal therapy proved unsuccessful.

As with Dr. Hagemeister, appellant alleges that but for Dr. Hardin's representations as to the need for the aforementioned procedure, and the brief period required for the entire process, she would not have consented to the dental work commenced on February 4, 1976. The tooth allegedly "broke" at the gum line during the root canal operation, necessitating the insertion of a post for the proper placement of a crown. Willard contends that Hardin assured the post insertion and crowning at her next appearance in his office, with an intervening period for medication and healing. He purportedly represented that the tooth would be suitable for mastication after appellant's next appointment.

This subsequent meeting between appellant and respondent Hardin occurred on March 1, 1976. Hardin not only refused to insert the post and crown the tooth which had undergone root canal therapy, but he also drilled an adjacent tooth. Willard consented to the procedure performed on the "second" tooth only after Hardin indicated his first discovery of decay. Respondent also informed Willard that "the success of the root canal therapy was suspect," as that tooth was still "mobile."

Appellant alleges that Hardin described "an emergency gum condition" for the first time at the March 1 meeting. She further contends

that respondent represented this periodontal problem to preclude any immediate work on the "second" tooth which he had just drilled. Moreover, the "advanced" gum disease was supposedly so grave that the prompt extraction of the "root canal" tooth was also in order. Before Hardin would perform any further work on either tooth, he indicated that appellant must first have a periodontal consultation with respondent Waterman.

Doctor Hardin disagrees with appellant's characterization of his statements. He suggests that he neither described appellant's periodontal problem as "advanced or severe," nor did he intimate that gum therapy was required to salvage the "second" tooth, drilled during the March 1 meeting. Hardin asserts that the consultation with respondent Waterman was merely recommended to ascertain the extent of appellant's periodontal condition.

Willard met with Dr. Waterman on March 2, 1976. Waterman identified some of appellant's teeth as "extremely poor" and suggested their extraction. With regard to these teeth and the existing periodontal problem, respondent Waterman explained at least two alternative plans for treating the condition. Willard rejected the proposals, including one dental scheme which involved extractions and bridgework. Waterman insists that the treatment plan offered to appellant was "a viable, rational approach" to a dental condition aggravated by a periodontal problem which had "progressed over the years." Respondent relates that no periodontal treatment was rendered at the March 2 consultation. Before Willard rejected his proposals, Waterman advised her that "a definite and unequivocal cure" for her condition could not be implemented at that time.

While respondents Hagemeister and Hardin agreed on the need for a root canal and crown in an attempt to salvage appellant's tooth, there are apparent conflicts with regard to the nature and extent of their representations concerning this dental treatment. Before the purported misrepresentations are addressed, however, the general allegation of negligence against all of the respondents must be resolved.

First, the procedural requirements which are dispositive to this appeal appear in Code of Civil Procedure, section 437c.[3] This statutory guide-

---

[3]Code of Civil Procedure, section 437c, provides in relevant part: "Any party may move for summary judgment in any action or proceeding if it is contended that the action has no merit .... [¶] The motion shall be supported or opposed by affidavits,

line reflects the particular importance of the declarations supporting respondents' motions for summary judgment. "Moreover, the validity of a summary judgment is to be determined solely by the sufficiency of the affidavits which were before the court when the motion was heard, and this court will consider only the facts before the trial court at the time it ruled on the motion [citations]." (*Jacobs v. Retail Clerks Union, Local 1222* (1975) 49 Cl.App.3d 959, 966 [123 Cal.Rptr. 309].)

Willard alleges that respondents Hagemeister, Hardin, and Waterman each committed malpractice in the diagnosis and treatment of her dental condition. She asserts that respondent Eichstaedt was negligent due to his employment of these three dentists. ■ However, plaintiff's failure to submit the declaration of an expert in opposition to either motion for summary judgment is fatal to this appeal from the negligence count.

The preemptive weight of expert testimony in a malpractice action was described in *Starr v. Mooslin* (1971) 14 Cal.App.3d 988, 999 [92 Cal.Rptr. 583]: "Expert evidence in a malpractice suit is conclusive as to the proof of the prevailing standard of skill and learning in the locality and of the propriety of particular conduct by the practitioner in particular instances because such standard and skill is not a matter of general knowledge and can only be supplied by expert testimony. [Citations.]" The Supreme Court reiterated this well-established rule in *Landeros v. Flood* (1976) 17 Cal.3d 399, 410 [131 Cal.Rptr. 69, 551 P.2d 389, 97 A.L.R.3d 324], holding: "The question remains one of fact, to be decided on the basis of expert testimony: 'The standard of care against which the acts of a physician are to be measured is a matter peculiarly within the knowledge of experts; it presents the basic issue in a malpractice action and can only be proved by their testimony [citations], unless the conduct required by the particular circumstances is within the common knowledge of the layman.' (*Sinz v. Owens* (1949) 33 Cal.2d 749, 753 ... [citations].)"

declarations, ... and matters of which judicial notice shall or may be taken.... [¶] Such motion shall be granted if all the papers submitted show that there is no triable issue as to any material fact and that the moving party is entitled to a judgment as a matter of law. In determining whether the papers show that there is no triable issue as to any material fact the court shall consider all of the evidence set forth in the papers, except that to which objections have been made and sustained by the court, and all inferences reasonably deducible from such evidence .... [¶] ... [¶] If a party is otherwise entitled to a summary judgment pursuant to the provisions of this section, summary judgment shall not be denied on grounds of credibility or for want of cross-examination of witnesses furnishing affidavits or declarations in support of the summary judgment ...."

The dental procedures utilized in the effort to salvage appellant's tooth, remove decay from an adjacent tooth, and diagnose her periodontal problem are not within a layman's "common knowledge." Respondents recognized this aspect of the case, as well as the absence of any legal distinction between dental and medical malpractice actions (*Roberts* v. *Parker* (1932) 121 Cal.App. 264, 267-268 [8 P.2d 908]), and secured the declaration of experts in support of their respective motions for summary judgment. Because respondents also had a special knowledge of "the community standard of care," each offered his own declaration as a supplement to the expert affiants. (*Pfingsten* v. *Westenhaver* (1952) 39 Cal.2d 12, 20 [244 P.2d 395].)

The declarations of Dr. Phillip Solomon, who personally examined appellant after reviewing relevant records, and Dr. Dennis Galanter, a certified expert in periodontology, assume special significance in this appeal. In support of the motion for summary judgment by respondents Hagemeister, Hardin, and Eichstaedt, Solomon states that the diagnosis and treatment rendered at Spring Dental Arts were "within the standard of care in the community." Supporting the motion made by respondent Waterman, Galanter similarly states that the consultation and diagnostic recommendations submitted to appellant were "well within the community standard of care for periodontists." Willard counters these expert assessments with only her personal declaration that these respondents were negligent in their diagnosis and rendition of dental services.

In *Segura* v. *Brundage* (1979) 91 Cal.App.3d 19, 29 [153 Cal.Rptr. 777], the court recognized a line of cases where the moving defendant, by its affidavits, effectively precluded any possibility of recovery by the plaintiff.[4] It is important to note that more than two years elapsed between the filing of appellant's first amended complaint in this action and the trial court hearing on the initial motion for summary judgment (Aug. 23, 1979; see fn. 2, *ante*). During this period appellant not only failed to obtain an expert evaluation regarding any alleged mal-

---

[4]The court cited the decision in *Swope* v. *Moskovitz* (1967) 253 Cal.App.2d 514 [61 Cal.Rptr. 277] in which the plaintiff was "concededly" not a competent witness to oppose the motion for summary judgment, and failed to effectively utilize the discovery process during nearly three years which elapsed between the filing of the complaint and the granting of the motion. (*Id.* at pp. 516-517.) Also noted was *Maltby* v. *Shook* (1955) 131 Cal.App.2d 349 [280 P.2d 541], where the court affirmed the summary judgment for the defendants because the plaintiff's opposing declaration was based on conclusions and personal opinion. (*Id.* at p. 354.)

practice, but also offered only her personal opinion that each respondent was somehow negligent. It is difficult to see how respondents in this case could have made a more definite showing in negation of the negligence charge against them.

Through the parties' declarations in this case, the summary judgment procedure indicates that appellant does not possess evidence of respondents' alleged malpractice which demands the analysis of trial. (*Leasman* v. *Beech Aircraft Corp.* (1975) 48 Cal.App.3d 376, 380 [121 Cal.Rptr. 768].) The summary judgment stands for each respondent as to the negligence cause of action. The supporting declarations state facts sufficient to sustain a judgment, and the counterdeclarations do not proffer competent and sufficient evidence to present a triable issue of fact as to any purported malpractice. (*Ibid.*)

■ Appellant attempted to expand the issues in this proceeding through an assertion of "abandonment" in her declaration opposing Waterman's motion for summary judgment. The allegation of "patient abandonment" does not appear anywhere in appellant's original complaint or first amended complaint. Furthermore, Willard never requested the trial court to allow a subsequent leave to amend for the inclusion of this theoretical possibility. The procedural flaw involved here violates a principle enunciated in *Craig* v. *Earl* (1961) 194 Cal.App.2d 652, 656 [15 Cal.Rptr. 207]: "The counteraffidavits filed in response to a defendant's motion for summary judgment may not create issues outside the pleadings; are not a substitute for an amendment to the pleadings; and are an ineffective defense to the motion unless they 'set forth facts showing that . . . a good cause of action exists upon the merits.' (Code Civ. Proc., § 437c; *Hicks* v. *Bridges*, 152 Cal.App.2d 146, 148 . . . .)" (*IT Corp.* v. *Superior Court* (1978) 83 Cal.App.3d 443, 451-452 [147 Cal.Rptr. 828]; *Keniston* v. *American Nat. Ins. Co.* (1973) 31 Cal.App.3d 803, 812 [107 Cal.Rptr. 583].)

In addition to being improper subject matter for appellant's declaration, the abandonment argument has other significant shortcomings. Willard's declaration accuses Dr. Waterman of an error in medical judgment which caused the premature cessation of dental services. Whether the accusation is phrased in terms of abandonment or lack of due care, it is another analytical area which may be provable only by expert evidence in the context of this action. (1 Louisell & Williams, Medical Malpractice (1977) § 8.08, p. 220.)

It must also be recounted that Willard rejected Waterman's diagnostic recommendations; and it has heretofore been stated that the treatment proposals were within "the community standard of care." As a factual matter, it was the patient who refused the dentist's services, and not the dentist who abandoned "the basic obligation of faithfulness to professional duty."

By parity of reasoning, the allegations of fraud must also fail as to respondent Waterman. In neither the original complaint nor the first amended complaint is Dr. Waterman charged with making any misrepresentations to appellant. In fact, the only paragraph in the first amended complaint which links Waterman to the purported fraud is the general averment of agency. Appellant attempts to characterize Waterman as furthering the alleged misrepresentations of Hagemeister and Hardin. In her declaration opposing this respondent's motion for summary judgment, appellant asserts that Waterman misrepresented the need for extractions and bridgework in his proposed treatment.

Willard's counterdeclaration is an ineffective defense to Waterman's motion. Even with the liberal construction of the agency allegation, attempting to connect this respondent to Hagemeister and Hardin, appellant's declaration fails to set forth facts showing a cause of action for fraud against Waterman. (*Craig v. Earl, supra*, 194 Cal.App.2d 652, 656.) To maintain an action based on fraud it is necessary for Willard to show reliance upon the alleged misrepresentation. (*Elkind v. Woodward* (1957) 152 Cal.App.2d 170, 174-175 [313 P.2d 66].) Appellant's declaration not only indicates the absence of reliance, but also states clearly her rejection of Waterman's diagnosis and proposed treatment. Willard's sworn statement discloses that a genuine issue of fact is missing. The trial court properly applied the law to the uncontroverted rejection in rendering a summary judgment for Dr. Waterman. (*Nini v. Culberg* (1960) 183 Cal.App.2d 657, 663 [7 Cal.Rptr. 146].)

While the nature and extent of the representations made by Hagemeister and Hardin remain at issue, the summary disposition of the negligence cause of action as to each respondent, and the dismissal of the fraud allegations against Waterman, are affirmed. The problem confronting appellant at this point in the litigation was explained in *Frazier, Dame, Doherty, Parrish & Hanawalt v. Boccardo, Blum, Lull, Niland, Teerlink & Bell* (1977) 70 Cal.App.3d 331, 338 [138 Cal.Rptr. 670], as follows: "If the defendants' declarations in support of a motion

for summary judgment establish a complete defense to plaintiff's action or demonstrate an absence of an essential element of plaintiff's case, and the plaintiff's declaration in reply does not show that a triable issue of fact with respect to that defense or that essential element exists, no amount of factual conflicts upon other aspects of the case will affect the result and the motion for summary judgment should be granted. [Citation.]"

■ The negligence issue and fraud allegations against Waterman are clearly severable from the statements made to Willard by Hagemeister and Hardin at the dental appointments of February 4 and March 1, 1976. The identification of appellant's dental problems and the procedures adopted to arrest the decay in her teeth do not evidence malpractice. However, the representations concerning the salvage of a tooth and appellant's periodontal condition raise triable issues of fact.

Respondents Hagemeister and Hardin both deny appellant's allegation that they assured the salvage of a tooth through a "thirty-minute" root canal and crowning. Regardless of the purported promise of a brief procedure, a question arises as to whether respondents misled Willard by failing to inform her that extraction of the tooth was still an imminent possibility. Hagemeister and Hardin may have recommended a dental process without sufficient knowledge of an existing periodontal problem. In addition, respondents may have deliberately withheld their knowledge of dental conditions which made the success of the root canal therapy uncertain.

Hardin allegedly misrepresented the severity of appellant's periodontal problem diagnosed on March 1, 1976. The "advanced gum condition" reportedly preempted any further work on the "root canal" tooth, or an adjacent tooth just drilled at that meeting. There is a dispute concerning Hardin's description of the problem and purported suggestion for "gum therapy."

Whether Hagemeister or Hardin made negligent or intentional misrepresentations to Willard are triable issues of fact. What is apparent in this situation is that appellant was fully entitled to rely upon respondents' professional skill and judgment during these meetings. This fiduciary relationship among Willard, Hagemeister, and Hardin continued during the course of treatment. Willard, being unlearned in dental sciences, had an abject dependence upon and trust in Hagemeister and

Hardin for the information upon which she relied during the decisional process. Appellant's position raised an obligation in Hagemeister and Hardin that "transcends arms-length transactions." (*Cobbs* v. *Grant* (1972) 8 Cal.3d 229, 242 [104 Cal.Rptr. 505, 502 P.2d 1]; *Sanchez* v. *South Hoover Hospital* (1976) 18 Cal.3d 93, 102 [132 Cal.Rptr. 657, 553 P.2d 1129].)

The alleged misrepresentations as to what would happen to Willard's teeth in the future are normally characterized as opinions. Here, however, respondents' statements may be interpreted as implying knowledge of facts which made the prognostications probable. If Hagemeister or Hardin lacked knowledge of such facts, his statements are actionable misrepresentations. Because respondents are specially qualified fiduciaries, Willard's reliance upon their opinions would be justifiable. (4 Witkin, Summary of Cal. Law (8th ed. 1974) Torts, §§ 448-450, pp. 2712-2715.)

Reliance generally is a question of fact. (*City of Salinas* v. *Souza & McCue Construction Co.* (1967) 66 Cal.2d 217, 224 [57 Cal.Rptr. 237, 424 P.2d 921].) Willard contends that but for respondents' misrepresentations, she would not have undergone continued treatment at Spring Dental Arts. Appellant argues that when the crown was not inserted at the first appointment, it was Hardin's assurance that the tooth would be suitable for mastication after the next meeting which prompted her return. It is further alleged that Hardin's description of a "severe" periodontal problem produced the added cost of the necessitated treatment with Waterman.

Despite Willard's natural reservations regarding extraction, the prompt removal of the decaying tooth may have alleviated a considerable expense to appellant. The question concerning any additional expenditures required for respondents' plan, and the cost for any dental repairs which might still be needed, presents an issue of damages for the trial court. The preceding discussion indicates that the entry of summary judgment for Hagemeister and Hardin was improper as to the fraud allegations.

The fiduciary relationship in this case also requires that the alternative negligence theories of malpractice and "informed consent" be distinguished. Respondents' expert affiants eliminated the allegations of negligent performance, but this court described the remaining issue of

informed consent in *Berkey* v. *Anderson* (1969) 1 Cal.App.3d 790 [82 Cal.Rptr. 67]. The question of fact is whether Hagemeister and Hardin gave Willard "sufficient information" as to the nature of the root canal and crowning, and the imminent possibility of extraction, so that she could intelligently decide whether to undergo the dental procedure. If Hagemeister and Hardin did not make this minimal disclosure of material facts, they are liable for all injuries sustained by Willard during the course of this dental treatment, whether the treatment was negligent or not. (*Id.* at p. 805.)

The Supreme Court utilized the *Berkey* analysis in formulating the current test for informed consent. In *Cobbs* v. *Grant, supra*, 8 Cal.3d 229, 245, the high court defined this negligence theory: "In sum, the patient's right of self-decision is the measure of the physician's duty to reveal. That right can be effectively exercised only if the patient possesses adequate information to enable an intelligent choice. The scope of the physician's communications to the patient, then, must be measured by the patient's need, and that need is whatever information is material to the decision. Thus the test for determining whether a potential peril must be divulged is its materiality to the patient's decision. [Citation.]"

The Supreme Court decided in *Cobbs* that the testimony of the patient-plaintiff may establish the causal relationship between the physician's failure to inform and the plaintiff's injury. This determination has special significance to the case at hand. Not only is expert testimony not required to show a lack of informed consent, but the requisite causal connection also arises from Willard's counterdeclaration that if the inherent risks had been revealed, she would not have consented to the treatment given. (*Ibid.*)

Admittedly, Willard's first amended complaint is not a model pleading. A reading of the first four causes of action indicates that in addition to fraud, appellant attempted to charge Hagemeister and Hardin with a failure to disclose material facts necessary for an informed consent to their proposed treatment. Although the allegations do not set forth the alternative theory of negligence with sufficient clarity, they clearly serve as a basis for a second amendment. Willard's pleading merely joins two causes of action, one for fraud, and one for informed consent, without separately stating them against Hagemeister and Hardin.

A fraud and a negligent act pleaded in a single count may be construed as setting up both theories of recovery in the case at hand. As this court directed in *Rainer* v. *Community Memorial Hospital* (1971) 18 Cal.App.3d 240, 257 [95 Cal.Rptr. 901]: "An amendment should be permitted to improve a poorly pleaded issue. [Citation.]" Even a change in legal theory which states a "wholly different cause of action" does not prevent an amendment. Willard may submit a second amended complaint in this matter to set forth, with sufficient certainty, a cause of action for lack of informed consent against Hagemeister and Hardin. Respondents can claim neither prejudice nor surprise, as the first and second amended complaints relate to "the same general set of facts." (*Smeltzley* v. *Nicholson Mfg. Co.* (1977) 18 Cal.3d 932, 940 [136 Cal. Rptr. 269, 559 P.2d 624, 85 A.L.R.3d 121]; 3 Witkin, Cal. Procedure (2d ed. 1971) Pleading, § 1080, p. 2656.)

It is apparent that the potential liability of respondent Eichstaedt is still at issue here. Should appellant prevail on either the fraud allegations or an amended assertion of informed consent against either Hagemeister or Hardin, Eichstaedt may possibly be held liable as the principal on an agency theory. ■ As an elementary rule, the existence of an agency is a factual question within the province of the trier of fact. (*Anthony* v. *Enzler* (1976) 61 Cal.App.3d 872, 877 [132 Cal. Rptr. 553].)

The summary judgment is affirmed as to each respondent on the issue of malpractice, and as to respondent Waterman on the fraud issue, but reversed as to respondents Hagemeister, Hardin, Eichstaedt, and Eichstaedt, Inc., on fraud, with directions to the trial court to permit plaintiff, Faye L. Willard, to amend her complaint and to litigate the issue of informed consent against Hagemeister and Hardin.

Affirmed in part and reversed in part with directions.

Ashby, J., and Hastings, J., concurred.

Petitions for a rehearing were denied July 28, 1981, and appellant's petition for a hearing by the Supreme Court was denied September 2, 1981. Kaus, J., did not participate therein.