Filed 5/19/16  Markolt v. Pinter CA2/1

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION ONE

| | |
|---|---|
| CHRISTINA MARKOLT et al.,<br><br>        Plaintiffs and Appellants,<br><br>    v.<br><br>ADRIENNE S. PINTER,<br><br>        Defendant and Respondent. | B261464<br><br>(Los Angeles County<br>Super. Ct. No. PC 051644) |

APPEAL from a judgment of the Superior Court of Los Angeles County, Elia Weinbach, Judge.  Affirmed in part and reversed in part.

Ferguson Case Orr Paterson and Wendy C. Lascher for Plaintiffs and Appellants.

Ford, Walker, Behar & Haggerty, William C. Haggerty and Neil S. Tardiff, for Defendant and Respondent.

_____

Christina Markolt (Mrs. Markolt) and her husband, Gergely Markolt (Mr. Markolt) (collectively, Plaintiffs), sued Dr. Adrienne S. Pinter (Dr. Pinter) for professional negligence/medical malpractice. During the course of removing an impacted molar, Dr. Pinter fractured Mrs. Markolt's right mandible or jawbone. Over the course of the next year, Mrs. Markolt was seen and treated by several oral surgeons and underwent numerous procedures and treatments (including additional surgeries) to address her fractured mandible.

Plaintiffs sued Dr. Pinter for professional negligence, lack of informed consent, and loss of consortium. The trial court granted Dr. Pinter's motion for summary judgment finding that, even though there was a triable issue of fact with regard to the professional negligence claim, that finding was negated by Mrs. Markolt's informed consent to the extraction procedure. According to the trial court, "[i]nformed consent is a complete defense to a medical malpractice action."

On appeal, Plaintiffs assert that the trial court erred in granting judgment as a matter of law to Dr. Pinter on their professional negligence claim, because informed consent is a complete defense only to a claim for a lack of informed consent; "it is no defense to a cause of action based on the professional's failure to perform services within the standard of care." As we shall explain, we agree and reverse the judgment as it applies to the professional negligence claim only.[1]

---

[1] In their briefing on the motion for summary judgment, the parties addressed Mr. Markolt's loss of consortium claim. In its order granting Dr. Pinter summary judgment, however, the trial court said nothing about the loss of consortium claim, implicitly reasoning , or so we believe, that because Mr. Markolt's claim was derivative of his wife's claims, it necessarily failed as well. While a loss of consortium claim is triggered by the spouse's injury, "a loss of consortium claim is separate and distinct, and not merely derivative or collateral to the spouse's cause of action." (*Gapusan v. Jay* (1998) 66 Cal.App.4th 734, 742.) On appeal, however, Plaintiffs have not raised a separate argument regarding Mr. Markolt's claim. "Since there is no specific claim of error as to the loss of consortium [claim], we do not reverse the trial court as to this cause of action." (See *Rosencrans v. Dover Images, Ltd*. (2011) 192 Cal.App.4th 1072, 1089.)

# BACKGROUND

## I. Dr. Pinter's care and treatment of Mrs. Markolt

On November 23 or November 24, 2010,[2] Dr. Pinter, a general dentist, conducted an oral examination of Mrs. Markolt, took a periapical x-ray, and diagnosed tooth No. 32 with pericoronitis. As tooth No. 32 was a partial bony impaction, Dr. Pinter recommended extraction.

In connection with her recommendation for surgery, Dr. Pinter presented Mrs. Markolt with a written informed consent form. The form addressed a wide-range of dental procedures and treatments, including the removal of teeth, fillings, root canals, endodontic treatment, treatment related to periodontal loss (tissue and bone) and creation and fitting of dentures. The risks stated on the informed consent form for extraction of tooth No. 32 were "pain, swelling, spread of infection, dry socket, loss of feeling in my teeth, lips, tongue and surrounding tissue (Paresthesia) that can last for an indefinite period of time or fractured jaw. I understand I may need further treatment by a specialist if complications arise during or following treatment, the cost of which is my responsibility." Mrs. Markolt reviewed, read and signed the form. According to Mrs. Markolt, Dr. Pinter did not go over the form point-by-point with Mrs. Markolt, but simply told her where to sign or initial the form.

On November 30, 2010, during Dr. Pinter's extraction of tooth No. 32, Mrs. Markolt suffered a fracture of her right mandible. The dentist took a periapical x-

---

[2] It is unclear from Dr. Pinter's medical chart for Mrs. Markolt when the initial consultation occurred. For example, the "Medical History" indicates that Mrs. Markolt completed and signed the form on November 23, 2010 and Dr. Pinter signed on November 24, 2010. In addition, the "informed consent" form signed by Mrs. Markolt is dated November 23, 2010. Mrs. Markolt's deposition testimony pinpoints the initial consultation date as November 23, 2010. However, Dr. Pinter's notes from that initial consultation indicate that it occurred on November 24, 2010. In her statement of undisputed facts submitted in support of her motion for summary judgment, Dr. Pinter identifies November 24, 2010 as the date of the initial consultation and Mrs. Markolt did not dispute that assertion.

ray to evaluate the mandibular fracture. Dr. Pinter then referred Mrs. Markolt to an oral surgeon for further evaluation. Mrs. Markolt did not return to Dr. Pinter for treatment.

## II. The subsequent care and treatment of Mrs. Markolt

Over the course of the next year, Mrs. Markolt consulted with and/or was treated by four different oral surgeons in connection with the fracture of her right mandible. Among other things, she underwent three surgeries to correct the fracture, including bone graft surgery to her right mandible in November 2011; further, she endured seven weeks of intravenous antibiotics to treat osteomyelitis, a bone infection at the site of the extraction.

## III. Plaintiffs' lawsuit against Dr. Pinter

On September 29, 2011, Plaintiffs filed their complaint against Dr. Pinter, alleging three causes of action: professional negligence; failure to obtain informed consent; and loss of consortium.

On October 5, 2011, Dr. Pinter answered Plaintiffs' complaint denying generally the allegations and asserting multiple affirmative defenses including the affirmative defense that Mrs. Markolt had actual knowledge of the risks of surgery and voluntarily assumed those risks.

On August 27, 2013, Dr. Pinter moved for summary judgment or, in the alternative, for summary adjudication on Mrs. Markolt's claim for lack of informed consent. In support of her motion, Dr. Pinter submitted the declaration of William Ardary, M.D., D.D.S., a currently practicing, board-certified, oral surgeon specializing in oral and maxillofacial surgery. Based on his education, training and experience and on his review of the medical records and the deposition testimony of Mrs. Markolt's treating physicians, Dr. Ardary opined that Dr. Pinter (a) "appropriately recommended the extraction of tooth No. 32 in light of the diagnosis of pericor[o]nitis"; (b) "appropriately obtained informed consent" from Mrs. Markolt for the extraction of tooth No. 32; and (c) "did not breach the standard of care when she caused [Mrs. Markolt's] mandibular

4

fracture." Dr. Ardary stated, "The fact that such a fracture occurred does not mean that Dr. Pinter practiced below the standard of care."[3]

Plaintiffs opposed the motion, submitting in support of their opposition a declaration by Marvin Jensen, M.D., D.D.S., a currently practicing oral surgeon specializing in oral and maxillofacial surgery. Dr. Jensen, based on his education, training and experience and on his review of the medical records and the deposition testimony of Mrs. Markolt's treating physicians, opined that Dr. Pinter did not meet the standard of care because, among other things,[4] she attempted the extraction without the aid of even one assistant and because she continued the extraction after it became evident that "[t]his was a complicated surgery. . . . Dr. Pinter should have recognized the complication, stopped the procedure [after an hour] and referred Mrs. Markolt to an Oral and Maxillofacial Surgeon." Dr. Jensen agreed with one of Mrs. Markolt's oral surgeons, Dr. Jeff Hammoudeh, M.D., D.D.S., who testified at his deposition that while a facture is a known risk when performing an extraction, there should only be a "low possibility" of it occurring; like Dr. Hammoudeh, Dr. Jensen "would be very critical of [his] own work if [he] fractured a mandible performing an extraction."

On October 17, 2014, the trial court granted summary judgment to Dr. Pinter. Initially, the court indicated that it had found that the declaration by Plaintiffs' expert, Dr. Jensen, raised a triable issue of fact with regard to the claim of professional negligence: "a review of the entire declaration [by Dr. Jensen] sets forth a chain of events that ties the allegedly negligent acts to the ultimate damage, a mandibular fracture." However, after finding that the Mrs. Markolt had given her informed consent

---

[3] Plaintiffs objected to certain portions of Dr. Ardary's declaration, however, those objections were overruled. On appeal, Plaintiffs do not challenge the trial court's rulings with respect to their objections.

[4] Dr. Jensen also opines that Dr. Pinter did not meet the standard of care in her treatment of Mrs. Markolt because her diagnosis was based on an x-ray that "did not show the entire root structure" and "when Dr. Pinter diagnosed pericoronitis, [she] prescribed an inappropriate antibiotic . . . to combat the infection."

to the extraction procedure, the trial court concluded Dr. Pinter was entitled to judgment as a matter of law on all of Plaintiffs' claims, because "[i]nformed consent is a complete defense to a medical malpractice claim."

Judgment was entered on November 26, 2014, and then amended on January 9, 2015 to add an award of costs to Dr. Pinter. Plaintiffs timely appealed on January 21, 2015.

## DISCUSSION

### I. Standard of review

We review an order granting summary judgment de novo. (*Aguilar v. Atlantic Richfield Co.* (2001) 25 Cal.4th 826, 860 (*Aguilar*).) We independently review the record and apply the same rules and standards as the trial court. (*Zavala v. Arce* (1997) 58 Cal.App.4th 915, 925.) The trial court must grant the motion if "all the papers submitted show that there is no triable issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." (Code Civ. Proc., § 437c, subd. (c).)

In performing our independent review of a defendant's summary judgment motion, we apply the rules pertaining to summary judgment procedure. A defendant moving for summary judgment has the initial burden of showing that a cause of action lacks merit because one or more elements of the cause of action cannot be established or there is an affirmative defense to that cause of action. (Code Civ. Proc., § 437c, subd. (o); *Aguilar*, *supra*, 25 Cal.4th at p. 850.) If the defendant fails to make this initial showing, it is unnecessary to examine the plaintiff's opposing evidence, and the motion must be denied. However, if the moving papers make a prima facie showing that justifies a judgment in the defendant's favor, the burden shifts to the plaintiff to make a prima facie showing of the existence of a triable issue of material fact. (Code Civ. Proc., § 437c, subd. (p)(2); *Aguilar*, at p. 849.)

In determining whether the parties have met their respective burdens, the court must "consider all of the evidence" and "all of the inferences reasonably drawn therefrom," and "must view such evidence [citations] and such inferences [citations], in the light most favorable to the opposing party." (*Aguilar*, *supra*, 25 Cal.4th. at pp. 844–

845.)  "There is a triable issue of fact if, and only if, the evidence would allow a reasonable trier of fact to find the underlying fact in favor of the party opposing the motion in accordance with the applicable standard of proof."  (*Id*. at p. 850, fn. omitted.)  Consequently, a defendant moving for summary judgment must "present evidence that would require . . . a trier of fact *not* to find any underlying material fact more likely than not."  (*Id*. at p. 845.)

"Although our review of a summary judgment motion is de novo, we review the trial court's final rulings on evidentiary objections by applying an abuse of discretion standard."  (*Powell v. Kleinman* (2007) 151 Cal.App.4th 112, 122 (*Powell*).)

## II.     Informed consent is not a complete defense to a professional negligence claim

We are unaware of any California case law holding that informed consent is a complete defense to a professional negligence/medical malpractice claim.  Indeed, it has long been recognized that a lack of informed consent is a theory of liability separate from professional negligence/medical malpractice.  (See *Cobbs v. Grant* (1972) 8 Cal.3d 229, 240–244; *Arato v. Avedon* (1993) 5 Cal.4th 1172, 1190–1191.)  In *Willard v. Hagemeister* (1981) 121 Cal.App.3d 406, the trial court granted summary judgment in favor of dentists who were accused of fraud and malpractice in the diagnosis and treatment of the plaintiff's dental condition.  The Court of Appeal affirmed summary judgment in favor of all of the dentists on the malpractice claim, but directed the trial court to allow the plaintiff to amend her complaint so as to allow a claim against two of the dentists for lack of informed consent.  (*Id*. at p. 419.)  As the Court of Appeal explained, a "question of fact" existed as to whether the treating dentists gave the plaintiff "'sufficient information' as to the nature of [the procedure] so that she could intelligently decide whether to undergo the dental procedure.  If [the dentists] did not make this minimal disclosure of material facts, they are liable for all injuries sustained by [the plaintiff] during the course of this . . . treatment, *whether the treatment was negligent or not*."  (*Id*. at p. 418, italics added; see *Warren v. Schecter* (1997) 57 Cal.App.4th 1189,

7

1203–1204 [no merit to doctor's contention that plaintiff could not recover for disclosed complications].)[5]

Accordingly, we hold that the trial court was mistaken when it stated that informed consent is a complete defense to a medical malpractice claim. However, because Plaintiffs expressly disavow any challenge to the trial court's finding that there was not a triable issue of material fact with respect to their lack of informed consent claim, we need not and do not review that claim. (See *Garrett v. Howmedica Osteonics Corp.* (2013) 214 Cal.App.4th 173, 180, fn. 4; *Angelotti v. The Walt Disney Co.* (2011) 192 Cal.App.4th 1394, 1402, fn. 3.)

## III. Professional negligence/medical malpractice claim

In order to prevail on a claim for profession negligence against a doctor, a plaintiff-patient must establish the following elements: (1) the doctor was negligent; (2) the plaintiff-patient was harmed; and (3) the doctor's negligence was a substantial factor in causing the plaintiff-patient's harm. (See CACI Nos. 400, 500; see also Code Civ. Proc., § 340.5; *Uriell v. Regents of University of California* (2015) 234 Cal.App.4th 735, 743.) A nonspecialist physician is negligent if he/she fails to use the level of skill, knowledge, and care in diagnosis and treatment that other reasonably careful physicians use in the same or similar circumstances. (See CACI No. 501; see also *Mann v. Cracchiolo* (1985) 38 al.3d 18, 36.)

### A. *Medical malpractice and expert evidence*

"Medical providers must exercise that degree of skill, knowledge, and care ordinarily possessed and exercised by members of their profession under similar circumstances." (*Powell*, *supra*, 151 Cal.App.4th at p. 122.) Thus, in "'any medical malpractice action, the plaintiff must establish: "(1) the duty of the professional to use

---

[5] Because a lack of informed consent is considered a type of negligence claim separate from a medical malpractice claim, there are separate and differing jury instructions for each claim. (See CACI Nos. 500 [essential elements for medical negligence], 501 [standard of care for health care professionals], 532 [definition of informed consent], and 533 [essential elements for failure to obtain informed consent].)

8

such skill, prudence, and diligence as other members of his profession commonly possess and exercise; (2) a breach of that duty; (3) a proximate causal connection between the negligent conduct and the resulting injury; and (4) actual loss or damage resulting from the professional's negligence."'" (*Hanson v. Grode* (1999) 76 Cal.App.4th 601, 606.)

"Whenever the plaintiff claims negligence in the medical context, the plaintiff must present evidence from an expert that the defendant breached his or her duty to the plaintiff and that the breach caused the injury to the plaintiff." (*Powell*, *supra*, 151 Cal.App.4th at p. 123; see *Willard v. Hagemeister*, *supra*, 121 Cal.App.3d at p. 412 [expert testimony needed to sustain dental malpractice claim].) "'California courts have incorporated the expert evidence requirement into their standard for summary judgment in medical malpractice cases. When a defendant moves for summary judgment and supports his motion with expert declarations that his conduct fell within the community standard of care, he is entitled to summary judgment unless the plaintiff comes forward with conflicting expert evidence.'" (*Munro v. Regents of University of California* (1989) 215 Cal.App.3d 977, 984–985.)

Here, Dr. Pinter satisfied her initial burden of production on these issues through her submission of Dr. Ardary's declaration, which Plaintiffs do not challenge on appeal. Thus, the burden shifted to Plaintiffs to raise a triable issue of material fact. (See *Aguilar*, *supra*, 25 Cal.4th at p. 850; *Bushling v. Fremont Medical Center* (2004) 117 Cal.App.4th 493, 506 (*Bushling*).) Plaintiffs attempted to do this by presenting the declaration of Dr. Jensen, who opined that Dr. Pinter breached the standard of care and, as a result, caused Mrs. Markolt's alleged damages. Plaintiffs contend that Dr. Jensen's declaration was sufficient to preclude summary judgment on the malpractice claim by creating a triable issue as to both breach and causation. We agree.

B.     *Adequacy of Dr. Jensen's declaration*

1.     STANDARDS FOR EXPERT TESTIMONY

Under Evidence Code section 801, subdivision (a), a person who qualifies as an expert may give opinion testimony "[r]elated to a subject that is sufficiently beyond common experience" when "'the opinion of [an] expert would assist the trier of fact.'"

9

(*Jennings v. Palomar Pomerado Health Systems, Inc*. (2003) 114 Cal.App.4th 1108, 1116 (*Jennings*).)  For this reason, "qualified medical experts may, with a proper foundation, testify on matters involving causation when the causal issue is sufficiently beyond the realm of common experience that the expert's opinion will assist the trier of fact to assess the issue of causation."  (*Id*. at p. 1117.)

Nonetheless, an expert "does not possess a carte blanche to express any opinion within the area of expertise."  (*Jennings*, *supra*, 114 Cal.App.4th at p. 1117.)  Subdivision (b) of Evidence Code section 801 provides that expert opinion must be "[b]ased on matter . . . that is of a type that reasonably may be relied upon by an expert in forming an opinion upon the subject to which his testimony relates. . . ."  Furthermore, Evidence Code section 802 provides that an expert witness "'may state . . . the reasons for his opinion and the matter . . . upon which it is based,'" unless precluded by law.  As our Supreme Court has explained, under these provisions, the court acts as a "gatekeeper," and "may inquire into, not only the type of material on which an expert relies, but also whether that material actually supports the expert's reasoning."  (*Sargon Enterprises, Inc. v. University of Southern California* (2012) 55 Cal.4th 747, 771 (*Sargon*).)

Where this showing is lacking, "'there is simply too great an analytical gap between the data and the opinion proffered.'"  (*Sargon*, *supra*, 55 Cal.4th at p. 771, quoting *General Electric Co. v. Joiner* (1997) 522 U.S. 136, 146.)  Thus, "when an expert's opinion is purely conclusory because unaccompanied by a reasoned explanation connecting the factual predicates to the ultimate conclusion, that opinion has no evidentiary value because an 'expert opinion is worth no more than the reasons upon which it rests.'"  (*Jennings*, *supra*, 114 Cal.App.4th at p. 1117.)  Accordingly, even when such testimony is admitted in connection with a summary judgment motion, it does not raise a triable issue of fact.  (*Nardizzi v. Harbor Chrysler Plymouth Sales, Inc*. (2006) 136 Cal.App.4th 1409, 1415; *Kelley v. Trunk* (1998) 66 Cal.App.4th 519, 524 (*Kelley*); see *Leslie G. v. Perry & Associates* (1996) 43 Cal.App.4th 472, 487–488.)

Instructive applications of these principles are found in *Jennings*, *supra*, 114 Cal.App.4th 1108, and *Bushling*, *supra*, 117 Cal.App.4th 493.  In *Jennings*, medical

personnel accidently left a retractor inside the plaintiff during a surgery. (*Jennings*, *supra*, 114 Cal.App.4th at p. 1112.) Later, when the retractor was removed, doctors found a grave infection near the original incision, but some distance from the retractor. (*Id.* at pp. 1113–1114.) In the plaintiff's medical malpractice action, his expert opined that the retractor caused the internal infection. (*Id.* at pp. 1114–1115.) To support his opinion, the expert posited that bacteria on the retractor multiplied and migrated to the site of the infection. (*Ibid.*) As there was no physical evidence of migration, the expert presented scenarios regarding how the migration might have occurred without leaving physical traces. (*Id.* at pp. 1115–1116.) The trial court excluded the opinion as speculative and unfounded. (*Id.* at p. 1116.) In affirming, the appellate court concluded that the expert's testimony regarding the migration was conjectural and conclusory. (*Id.* at pp. 1116–1121.)

In *Bushling*, the plaintiff underwent surgery to remove his gall bladder and to biopsy a mole on his abdomen. (*Bushling*, *supra*, 117 Cal.App.4th at p. 497.) Following the surgery, he discovered an injury to his left shoulder. (*Ibid.*) In his medical malpractice action, the defendant surgeons sought summary judgment on the ground that they engaged in no negligent conduct that caused his shoulder injury. (*Id.* at pp. 497–501.) The plaintiff's experts opined that the injury occurred because the plaintiff was improperly positioned on the surgery table or mishandled during the procedure. (*Id.* at pp. 503–505.) In affirming summary judgment, the appellate court held that the opinions of the plaintiff's experts lacked evidentiary value, reasoning that the experts "assume[d] the cause from the fact of the injury," as there was no evidence that the plaintiff was mis-positioned or mishandled during the surgery. (*Id.* at p. 510; see *Shugart v. Regents of University of California* (2011) 199 Cal.App.4th 499, 508 [expert's unsupported statement did not raise triable issue]; *Kelley*, *supra*, 66 Cal.App.4th at pp. 521–522, 524 [expert's conclusory statement did not carry defendant's initial burden].)

11

2.     DR. JENSEN'S DECLARATION CREATED TRIABLE ISSUES OF FACT WITH REGARD TO DR. PINTER'S ALLEGED NEGLIGENCE IN TREATING MRS. MARKOLT

Here, unlike the expert declarations in *Jennings*, *supra*, 114 Cal.App.4th 1108, and *Bushling*, *supra*, 117 Cal.App.4th 493, Dr. Jensen did not rely on factually unsupported hypotheticals and assumptions. Instead, Dr. Jensen applied his education, training, and experience to the facts of the case and offered expert opinions regarding Dr. Pinter's alleged negligence. For example, with regard to the issue of breach, Dr. Jensen raised a number of material factual issues for trial: (1) Dr. Pinter's general competence— according to Dr. Jensen, she prescribed an "inappropriate antibiotic" to combat the infection; (2) Dr. Pinter's preparation for the extraction procedure—Dr. Pinter admitted at her deposition that she practiced alone, without any assistants; according to Dr. Jensen, the extraction "should not have been performed by Dr. Pinter without at least one, but preferably multiple assistants"; in addition, Dr. Pinter did not take an "x-ray showing the entire root structure and surrounding bone"; thus, she was probably unaware that Mrs. Markolt's "jawbone had dense bone"; (3) Dr. Pinter's competence to perform the extraction—Dr. Pinter was a general dentist, not an oral surgeon specializing in oral and maxillofacial surgery; as a result, she was "practicing beyond the scope of her practice"; this lack of experience and training was evident when Dr. Pinter continued the extraction for approximately an hour, instead of recognizing much earlier, and certainly before the fracture, that this was a "complicated surgery" requiring someone with more skill, training, and experience; as one of Mrs. Markolt's treating surgeons (Dr. Hammoudeh) noted, a fracture should only exist as a "low possibility" in an extraction procedure; that same surgeon, who Dr. Jensen agreed with, also stated, "If I took out a set of wisdom teeth and I had a fracture of the mandible, I would be quite critical of myself."

We agree with the trial court that while Dr. Jensen's causation opinion is not set forth with great specificity or clarity, "it is also true that a review of the entire declaration sets forth a chain of events that ties the allegedly negligent acts" of Dr. Pinter to Plaintiffs' alleged injuries and damages.

12

In sum, through Dr. Jensen's declaration, Plaintiffs have met their burden with respect to their professional negligence/malpractice claim. Dr. Pinter argued below and on appeal that the fact that Mrs. Markolt's mandibular fractured during the procedure on November 30, 2010 does not mean that Dr. Pinter practiced below the standard of care. However, the contrapositive is also true: as established by Dr. Jensen and Dr. Hammoudeh, the fact that a fracture did occur does not mean that Dr. Pinter did not breach the standard of care. In other words, whether Dr. Pinter breached her duty of care to Mrs. Markolt and caused some injury to her is a question of fact for the jury to decide.

## DISPOSITION

Summary adjudication in favor of Dr. Adrienne S. Pinter on Christina Markolt's lack of informed consent claim and on Gergely Markolt's loss of consortium claim is affirmed. Summary adjudication on Christina Markolt's professional negligence/medical malpractice claim is reversed. The parties are to bear their own costs on appeal.

NOT TO BE PUBLISHED.


JOHNSON, J.


We concur:


CHANEY, Acting P. J.


LUI, J.


13