Filed 5/28/25  Garland v. Pacific Lipo CA2/2

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION TWO

| | |
|---|---|
| DEANDRA GARLAND,<br><br>    Plaintiff and Appellant,<br><br>    v.<br><br>PACIFIC LIPO,<br><br>    Defendant and Respondent. | B336682<br><br>(Los Angeles County<br>Super. Ct. No.<br>21STCV45286) |

APPEAL from a judgment of the Superior Court of Los Angeles County, Timothy Patrick Dillon, Judge.  Affirmed.

Deandra Garland, in pro. per., for Plaintiff and Appellant.

Peabody & Buccini, Thomas N. Peabody, Patrick S. Ludeman; Kjar, McKenna & Stockalper, Robert L. McKenna and Jessica M. Villegas for Defendant and Respondent.

_____

Appellant Deandra Garland had cosmetic surgery at a clinic operated by respondent Pacific Lipo (Pacific). The plan was to remove fat by liposuction and place it elsewhere in Garland's body. The surgeon accomplished the liposuction, but when anesthesia problems arose, was unable to complete the fat transfer. Acting in propria persona, Garland sued Pacific for medical malpractice and breach of contract.

The trial court granted Pacific's motion for summary judgment. (Code Civ. Proc., § 437c.)[1] On de novo review, we conclude that Garland has not shown a triable issue of fact. Her malpractice claim fails because she did not submit an expert declaration showing that Pacific breached the standard of care. Her contract claim fails because she agreed in writing that no particular outcome was guaranteed. We affirm.

## FACTS AND PROCEDURAL HISTORY
### Garland's Complaint

Garland alleged that she consulted Gary Takowsky, M.D., about cosmetic surgery to collect fat from her back, thighs, and abdomen for insertion into her buttocks. Garland paid Pacific $12,500 to have the procedure performed at its clinic. After surgery, she "observed that her body was grossly distorted," with one hip higher than the other, a misplaced belly button, and little or no volume to her buttocks.

Garland later learned there were problems with anesthesia during surgery. As a result, fat removed from her body was not inserted in her buttocks. Incisions were closed with surgical glue, not sutures, causing increased pain. She demanded a full refund

---

[1] Undesignated statutory references are to the Code of Civil Procedure.

2

but was offered $2,500.  She was deeply depressed about the disfigurement caused by the surgery.  Her complaint asserts causes of action for negligence and "breach."

**Pacific's Motion for Summary Judgment**

Pacific moved for summary judgment, asserting that there are no triable issues of material fact.  The medical providers were independent contractors who deemed it unsafe to complete the fat transfer due to problems administering intravenous (IV) anesthetic.  The standard of care required them to halt surgery.

Dr. Takowsky performed Garland's cosmetic procedures while a certified registered nurse anesthetist (CRNA) administered anesthesia.[2]  A CRNA is on a par with anesthesiologists; if a CRNA says that a patient cannot tolerate anesthesia, the surgeon must heed the CRNA.

Pacific offered an "Independent Contractor Disclosure Form" signed by Garland.  It states that her surgeon and CRNA are independent contractors who do not work for Pacific, "exercise their own independent medical judgement and are not subject to the supervision or control of Pacific Lipo with respect to treatment."

Garland signed an informed consent for abdominoplasty (tummy tuck) surgery.[3]  It states that the risks of surgery must be weighed against the potential benefit.  Specifically, "[c]ontour and shape irregularities and depressions may occur," and the umbilicus may disappear, be malpositioned, scarred, or

---

[2] Neither Dr. Takowsky nor the CRNA are named as defendants in Garland's lawsuit.

[3] Garland signed similarly-worded consent forms for the liposuction and fat transfer procedures.

3

"unacceptable [in] appearance." The form reads, "Although good results are expected, there is no guarantee or warranty expressed or implied, on the results that may be obtained. You may be disappointed with the results of surgery. Asymmetry, unanticipated shape and size . . . may occur after surgery." Additional surgery could be needed because "it may not be possible to achieve optimal results with a single surgical procedure."

Garland's signed consent authorized Dr. Takowsky to perform liposuction on her abdomen, thighs, love handles, flanks, and back; an "extended tummy tuck"; and "fat transfer to buttocks." She agreed, "I recognize that during the course of the operation and medical treatment or anesthesia, unforeseen conditions may necessitate different procedures than those above. I therefore authorize the above physician and assistants and designees to perform such other procedures that are in the exercise of his or her professional judgment necessary and desirable." She also agreed, "I understand there are no warranties or guarantees, implied or specific about my outcome." Further, "I understand that all forms of anesthesia involves [*sic*] risk and the possibility of complications, injury, and sometimes death."[4]

Garland presented herself for surgery two days after signing the consent forms. Before surgery, she verified the agreed-upon procedures in her own handwriting and acknowledged, "I understand what [the] risks and complications are, and have thoroughly discussed these with the doctor." Dr.

---

[4] Garland also signed an "informed consent for anesthesia" reiterating the risks and possibility of complications.

Takowsky completed the liposuction and tummy tuck portion of Garland's surgery. At that point, the CRNA exercised discretion to stop the surgery. Both the surgeon and CRNA deemed it unsafe to proceed further.

Anesthesia was administered to Garland through an IV that repeatedly "infiltrated" (failed). The CRNA made multiple attempts to regain IV access, without success. The CRNA felt it was unsafe for Garland to receive anesthesia and informed Dr. Takowsky. As a result, Dr. Takowsky did not transfer fat taken by liposuction into Garland's buttocks.

Johan Brahme, a board certified plastic surgeon, submitted an expert declaration in support of Pacific's motion for summary judgment. Dr. Brahme reviewed medical records and determined that Pacific "did not breach the standard of care when its independent contracted surgeon and CRNA made the decision that it was not safe to continue the procedure." Instead, Pacific and its staff "showed prudent concern and care in safeguarding the patient's wellbeing. Therefore, to a reasonable degree of medical probability, no alleged negligent acts or omissions on the part of Pacific Lipo caused or contributed to the claimed injuries of Plaintiff."

### Garland's Opposition

Garland presented no expert declaration, or even a personal declaration signed under penalty of perjury. Her evidence was unauthenticated, and consisted of photos of her body; a screenshot of Pacific's Web site; a surgery bill; an e-mail from Pacific quoting a price for services; and surgical records.

5

She did not submit a separate statement disagreeing with facts and evidence set forth in Pacific's motion.[5]

Garland argued that Pacific never disclosed Dr. Takowsky's independent contractor status; its Web site listed him as one of "our" surgeons, and she paid Pacific for all services.[6] She intentionally gained weight before surgery to have the fat transfer. She denied requesting a tummy tuck, but "acquiesced" to it because it was "highly recommended" and she was offered "an attractive discount."

Garland asserted that the surgical procedures should have been spaced out. Pacific instead performed the liposuction, tummy tuck, and proposed fat transfer all at once, which was reckless and created an unreasonable risk of harm. After surgery, Garland saw that "her body was grossly distorted" and the fat transfer was not accomplished.

## Pacific's Reply

Pacific challenged procedural deficiencies in Garland's opposition—the lack of a separate statement or an expert declaration regarding the standard of care. She did not refute Pacific's claim that there is no evidence of causation. Without admissible evidence of negligence, Garland did not show the existence of a triable issue of material fact. Her complaint sounds in tort, so she cannot make a breach of contract claim.

---

[5] Garland argued that she did not learn facts about the case "until after the appeal was filed." She could have requested a continuance to conduct discovery to learn "facts essential to justify opposition." (§ 437c, subd. (h).) It does not appear that Garland sought a continuance.

[6] Contrary to Garland's argument, exhibit A to her opposition states, "Meet *the* surgeons and staff." (Italics added.)

Pacific did not perform the surgery and cannot be held liable for any exercise of medical judgment in providing surgical care. The independent contractor status of the surgeon was disclosed to Garland in advance.

## The Trial Court's Ruling

The trial court granted Pacific's motion. It wrote that Garland underwent elective cosmetic surgery; afterward, she realized that her body was distorted. She claims that Pacific negligently performed the surgery, and she did not receive the results she requested.

The court ruled that Garland's claims fail because Pacific met the standard of care, and none of its acts or omissions were a proximate cause of her claimed injuries. This was based on Dr. Brahme's declaration. Garland's opposition "is not supported by an expert declaration, therefore, [she] does not carry her burden of establishing a triable issue of fact."

Apart from failing to prove medical malpractice, Garland signed an independent contractor disclosure. Pacific does not supervise or control an independent contractor and is not liable for his acts or omissions. Undisputed evidence shows that Dr. Takowsky and the CRNA are independent contractors.

The court declined to grant the motion based on Garland's failure to comply with the statutory requirement of a separate statement of facts. However, it sustained Pacific's objection that Garland filed no expert declaration and offered no admissible evidence. Garland's complaint did not assert a breach of contract claim; even if she had, her malpractice claim lies solely in tort, not in contract. Judgment was entered for Pacific on January 23, 2024. Garland appeals.

# DISCUSSION

## 1. Appeal and Review

The judgment is appealable. (§ 437c, subd. (m)(1).) A motion for summary judgment must be granted if no triable issue of material fact exists and the moving party is entitled to judgment as a matter of law. (*Id.*, subd. (c).) The procedure enables courts to cut through the pleadings and determine if trial is necessary. (*Aguilar v. Atlantic Richfield Co.* (2001) 25 Cal.4th 826, 843.) We review the record de novo to determine if triable issues exist. (*Shin v. Ahn* (2007) 42 Cal.4th 482, 499.)

Both parties must present "admissible evidence" to support and oppose summary judgment. (§ 437c, subd. (d).) A plaintiff "shall not rely upon the allegations . . . of its pleadings to show that a triable issue of material fact exists" and must set forth specific evidence. (*Id.*, subd. (p)(2).)

## 2. Procedural Issues

Garland's opening brief offers a one paragraph "statement of facts" with no citations to admissible evidence. She discusses a "Rod Davis," who is not a party to this action and was not mentioned in the trial court. She points to medical report "discrepancies" but does not claim to be an expert who can interpret the reports. Her brief is inadequate.

An appeal cannot succeed without proper citations to evidence. "To prevail on appeal, an appellant must establish both error and prejudice from that error. [Citation.] In order to demonstrate error, an appellant must supply the reviewing court with some cogent argument supported by legal analysis and citation to the record." (*WFG National Title Ins. Co. v. Wells Fargo Bank, N.A.* (2020) 51 Cal.App.5th 881, 894.) Failure to

8

provide accurate record citations and legal authority forfeits a claim of error.  (*Ibid.*)

Citing her status as a pro se litigant, Garland maintains that she "should not be held to the same stringent procedural standards as a licensed attorney."  The law does not support her position.  "[M]ere self-representation is not a ground for exceptionally lenient treatment.  Except when a particular rule provides otherwise, the rules of civil procedure must apply equally to parties represented by counsel and those who forgo attorney representation. . . . A doctrine generally requiring or permitting exceptional treatment of parties who represent themselves would lead to a quagmire in the trial courts, and would be unfair to the other parties to litigation."  (*Rappleyea v. Campbell* (1994) 8 Cal.4th 975, 984–985.)

The trial court accommodated Garland's propria persona status.  It could have summarily granted summary judgment for Pacific because Garland's failure to submit a separate statement addressing Pacific's undisputed facts was "a sufficient ground, in the court's discretion, for granting the motion."  (§ 437c, subd. (b)(3).)  Instead, the court exercised its discretion and allowed Garland to proceed despite the lapse.

Beyond her failure to file a separate statement of facts, Garland offered no admissible evidence.  She did not file a personal declaration under penalty of perjury, nor is there an expert declaration.  Her opposition reiterated the allegations of her complaint.  Citing the complaint instead of sworn declarations is impermissible.  (§ 437c, subds. (d) & (p)(2).)  "[S]ection 437c has always required the evidence relied on in supporting or opposing papers to be *admissible.*"  (*Perry v. Bakewell Hawthorne, LLC* (2017) 2 Cal.5th 536, 542.)

9

### 3. Agency Principles

Garland argues that individuals involved in her surgery "are in fact employees of Pacific Lipo," and all payments were made to Pacific. She further asserts that the individuals do not meet the test for being classified as independent contractors. Her argument is contradicted by evidence that she knew they are *not* employees.

Garland signed a disclosure form two days before surgery, acknowledging that the surgeon and CRNA are "not employees or agents of Pacific Lipo, but rather, are independent medical practitioners. Pacific Lipo does not supervise or control the independent contractor and does not assume liability for any action/omission of the independent medical providers."

Agency is " 'a question of law when the facts can be viewed in only one way.' " (*Markow v. Rosner* (2016) 3 Cal.App.5th 1027, 1039.) When, as here, the patient signs a disclosure form before surgery, stating that the physician is an independent contractor who is not employed by the facility, the facility is entitled to judgment as a matter of law. A patient's claim of reliance on a facility's involvement is negated by the actual notice provided by the facility. (*Id.* at pp. 1039–1043, 1045.)

### 4. The Evidence Supports Summary Judgment

A cause of action has no merit if one or more elements cannot be established. (§ 437c, subd. (*o*)(1).) Garland asserts that Pacific did not meet its burden on summary judgment, but did not object to Pacific's evidence, including its expert declaration. If no objections to evidence are raised in the trial court, they "shall be deemed waived." (*Id.*, subds. (b)(5), (d); *Reid v. Google* (2010) 50 Cal.4th 512, 530–531.)

### A. Malpractice Claim

To maintain her claim, Garland must show " '(1) a duty to use such skill, prudence, and diligence as other members of the profession commonly possess and exercise; (2) a breach of the duty; (3) a proximate causal connection between the negligent conduct and the injury; and (4) resulting loss or damage.' " (*Lattimore v. Dickey* (2015) 239 Cal.App.4th 959, 968; *Barragan v. Lopez* (2007) 156 Cal.App.4th 997, 1004.)

The standard of care and breach of it are established by experts. (*Avivi v. Centro Medico Urgente Medical Center* (2008) 159 Cal.App.4th 463, 467; *Massey v. Mercy Medical Center Redding* (2009) 180 Cal.App.4th 690, 694–695.) Summary judgment may be granted if a motion is supported by an uncontradicted declaration that the alleged misconduct fell within the standard of care. (*Munro v. Regents of University of California* (1989) 215 Cal.App.3d 977, 984–985.) A plaintiff's failure to submit a declaration of a medical expert in opposition "is fatal" to an appeal from summary judgment. (*Willard v. Hagemeister* (1981) 121 Cal.App.3d 406, 412.)

Dr. Brahme declared that the applicable standard of care required Dr. Takowsky to stop the procedure when the CRNA said it was unsafe to complete it, due to failure of the anesthesia. It would have been a breach of the standard of care if the surgery continued when the necessary IV medication could not be delivered. He opined that "no alleged negligent acts or omissions on the part of Pacific Lipo caused or contributed to the claimed injuries of Plaintiff." Garland did not present a contrary expert declaration about causation or the standard of care.

Absent contrary evidence, Dr. Brahme's declaration "is conclusive as to the proof of the prevailing standard of skill . . .

and of the propriety of particular conduct by the practitioner in particular instances because such standard and skill is not a matter of general knowledge and can only be supplied by expert testimony." (*Starr v. Mooslin* (1971) 14 Cal.App.3d 988, 999.) Garland presented no evidence to support her claims that performing more than one procedure at a time, or using dissolvable sutures, fell below the standard of care. The issues raised in her complaint are not within the common knowledge of laymen, and she is unqualified to interpret medical records. Pacific is entitled to summary judgment on the malpractice claim.

### B. Contract Claim

Garland argues that Pacific breached its contract by removing fat by liposuction, then failing to put it in her buttocks. Her complaint alleges that Pacific "failed to provide the agreed upon surgical procedure for which Plaintiff paid, [it] intentionally ignored Plaintiff's wishes and negligently caused the cosmetic result to be dramatically different than Plaintiff expected, and that [she] was told to expect."

"A medical malpractice suit need not be limited to a negligence theory. '[I]f a plaintiff can prove . . . that a surgeon has clearly promised a particular result (as distinguished from a mere generalized statement that the result will be good), and that the patient consented to an operation or other procedure in reliance on that promise, there can be recovery on the theory of warranty (or, to give the theory its more accurate name, breach of contract).' " (*Christ v. Lipsitz* (1979) 99 Cal.App.3d 894, 899.)

The problem with Garland's theory is that she agreed to undergo surgery with *no* promise of receiving the desired result. Her consent form states, "I recognize that during the course of

12

the operation and medical treatment or anesthesia, unforeseen conditions may necessitate different procedures." She also agreed, "I understand there are no warranties or guarantees, implied or specific about my outcome."

Garland's claim that she was promised a particular result conflicts with her signed agreement that unforeseen conditions (such as failure of anesthesia) may result in a different procedure and a different result. She cannot claim that Pacific promised to provide a particular result when the parties' agreement says exactly the opposite. She was warned in advance that, "You may be disappointed with the results of surgery," and possible complications could include a malpositioned belly button, "shape irregularities," and asymmetry; these are the undesired results that Garland alleges in her pleading. Garland's contract claim fails because Pacific never promised or guaranteed a specific surgical outcome or her happiness with the results.

## DISPOSITION

The judgment is affirmed.  Respondent is entitled to recover its costs on appeal.

NOT TO BE PUBLISHED.


LUI, P. J.

We concur:


ASHMANN-GERST, J.


CHAVEZ, J.